IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VERACITIES PBC**, a Delaware public benefit corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>**RUSSELL STRAND**, an individual; **MYRA STRAND**, an individual; **STRAND² SQUARED LLC**, an Arizona limited liability company; and **RUSSELL STRAND CONSULTING LLC**, an Arizona limited liability company,<br><br>                Defendants. | Case No. 3:19-cv-1712-SI<br><br>**OPINION AND ORDER** |

Harry B. Wilson and Chad A. Naso, MARKOWITZ HERBOLD PC, 1455 SW Broadway, Suite 1900, Portland OR 97201. Of Attorneys for Plaintiff.

Kenneth R. Davis II and Mohammed N. Workicho, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Veracities PBC ("Veracities" or "Plaintiff") filed this lawsuit against Defendants Russell Strand, Myra Strand, Strand² Squared LLC, and Russell Strand Consulting LLC ("RSC"). Before the Court is a motion to dismiss filed by Defendants RSC and Myra Strand (the "Moving Defendants"). Plaintiff alleges against the Moving Defendants unfair competition,

PAGE 1 – OPINION AND ORDER

trademark infringement, and tortious interference with contract. The Moving Defendants move to dismiss all of Plaintiff's claims, arguing that the Court lacks personal jurisdiction over them. For the following reasons, the Moving Defendants' motion is granted in part and the Court grants Plaintiff leave to conduct jurisdictional discovery.

## STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of its complaint, uncontroverted allegations must be taken as true. *Id*. In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L); *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212 (Or. 1982). Thus, this Court need only determine whether its exercise of personal jurisdiction over the Moving Defendants would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols*, 657 P.2d at 212.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id*. at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

Plaintiff does not assert general jurisdiction but only specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look to the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285.

The Ninth Circuit applies a three-part test, commonly referred to as the "minimum contacts" test, to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate. That test provides:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

PAGE 3 – OPINION AND ORDER

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong shifts to the defendant to present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802). "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft*, 905 F.3d at 603 (alterations in original) (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The purposeful direction test, often called the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted).

The key, however, is where the allegedly wrongful conduct took place. *Freestream Aircraft*, 905 F.3d at 604-06. For tortious conduct that takes place within the forum state, the purposeful availment test under *Paccar* is appropriate, while the purposeful direction analysis is appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state. *Id.* ("Read together, those statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction

analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state. . . . This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction. . . . The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.").

## BACKGROUND[1]

Russell and Myra Strand are residents of Flagstaff, Arizona. RSC and Strand² Squared are privately-held limited liability companies organized under the laws of Arizona. Veracities is a Delaware Corporation with its principal place of business in Portland, Oregon. It operates a nationwide and international professional training and certification program in science-based trauma interviewing that centers on an interviewing methodology known as the Forensic Experiential Trauma Interview™ ("FETI").

FETI is a science and practice-based methodology for interviewing victims of trauma and high stress, such as victims of sexual assault, domestic abuse, and mass shootings. Veracities is the exclusive owner of FETI, its methodology, and its training materials. Veracities owns several trademarks, including one for "Forensic Experiential Trauma Interviewing.™" Russell Strand co-created FETI. He, along with others, through another business entity, also invented other interviewing techniques, and assigned that intellectual property to Veracities. This assignment

---

[1] Because the pending motion only involves Moving Defendants Myra Strand and RSC, this section focuses on Plaintiff's allegations and information from materials filed with the pending motion that relate to the Moving Defendants or give context to facts relating to the Moving Defendants.

included a broad non-competition clause in which Russell Strand agreed for thirty years not to compete or support any entity that competes with Veracities in forensic interviewing techniques. Additionally, Russell Strand signed a consulting agreement with Veracities, agreeing to provide consulting services for Veracities and not to engage, promote, or support any competing business without permission from Veracities. Russell Strand is well known and recognized among Veracities' customer base as an expert in conducting forensic interviews.

After Russell Strand signed those contracts with Veracities, Myra and Russell Strand formed Strand² Squared. Plaintiff alleges that Strand² Squared directly competes with Veracities by either training FETI or programs that are indistinct from FETI. Myra and Russell Strand also jointly operate websites, www.strandsquared.com and www.russellstrand.com. These sites promote the businesses owned and managed by Myra and Russell Strand—Strand² Squared and RSC. Veracities alleges that Defendants have infringed Veracities' rights potentially hundreds or thousands of times because the Strand² Squared website states that the company and Myra Strand have trained thousands of professionals annually in FETI nationally and internationally. Veracities also alleges that the websites contain infringing uses of Veracities' intellectual property, and are designed to solicit business nationwide, including from Oregon.

For example, Plaintiff alleges that Myra Strand posts her biography on the website www.strandsquared.com. She states that she "is a managing partner, along with her husband [Russell Strand], of Strand² Squared LLC where she provides consultation, forensic experiential trauma interviewing, training and assistance to agencies and service providers." Because "forensic experiential trauma interviewing" is a registered trademark of Veracities, Veracities alleges that this statement infringes its trademark and creates confusion in the marketplace by erroneously suggesting that Myra Strand, Russell Strand, and Strand² Squared have the right to

train and teach FETI. Veracities asserts that Myra Strand makes similar infringing statements in her biographies distributed at specific conferences in which she presented.

Plaintiff alleges as another example that the RSC website, www.russellstrand.com, promotes Russell Strand as "the creator of the Forensic Experiential Trauma Interview (FETI)" and his "implementation of numerous promising best practices [including,] the Forensic Experiential Trauma Interview, also known as FETI." Plaintiff asserts that this unauthorized use of its trademark infringes and creates confusion in the marketplace because it suggests that Russell Strand and RSC have the right to train and teach FETI, when they do not.

Plaintiff also alleges that Myra Strand, Strand² Squared, and RSC knew about the contracts between Russell Strand and Veracities. Plaintiff alleges that these Defendants intentionally interfered with those agreements and caused Russell Strand to breach them "by inducing Russell Strand to provide assistance to them in teaching, presenting, and providing services relating to FETI and other Veracities proprietary interviewing techniques."

Plaintiff further alleges that Defendants, including through both websites, market and sell services for a program they call "Trauma Responsive Investigations and Prosecutions," or "TRIP." Plaintiff claims that this program is indistinct from FETI and infringes Veracities' trademarks. Plaintiff alleges Defendants' conduct is creating confusion in the marketplace, and that Plaintiff's customers have contacted Myra Strand, Russell Strand, Strand², and RSC to obtain FETI training as a result of this confusion.

One example provided by Plaintiff regarding confusion in the market and the Moving Defendants' asserted purposeful aiming at Oregon involves the Strand² Squared website and Myra Strands' purported solicitation into Oregon. On December 11, 2018, Twila Rosenberg, Victim Assistance Director/Grant Coordinator for Jefferson County, Oregon contacted Myra

Strand via the Strand² Squared website to ask about FETI training. Myra Strand responded by telling Ms. Rosenberg to direct FETI inquiries to www.certifiedFETI.com, a website belonging to Plaintiff. Myra Strand also offered to "contract with you pertaining to any other topic we teach that does not involve FETI or other interviewing topics." ECF 17-1.

Additionally, on July 30, 2018, Desiree Coyote, a member of the Confederated Tribes of the Umatilla Indian Reservation, Family Violence Services section, reached out by email to Myra Strand.[2] Ms. Coyote noted that she previously had attended an FETI presentation by Russell Strand and asked about Mr. Strand giving a "same or similar" presentation to a joint federal and state summit in Pendleton, Oregon. This presentation would be "specific to law enforcement, prosecution, and advocacy." Myra Strand responded by booking Russell Strand for a personal appearance, not through Veracities. On October 29, 2018, Myra Strand forwarded the email string between Ms. Coyote and herself to Veracities, noting that the contract had already been signed,[3] the situation was "a bit of a mess," the contract did not specifically say "FETI," and asking how Veracities wanted the Strands to proceed. ECF 17-3.

## DISCUSSION

Plaintiff alleges that the Moving Defendants committed torts while outside the forum, and thus the purposeful direction analysis and "effects test" is appropriate for determining personal jurisdiction in this case. Under the three-part effects test, for purposeful direction "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

---

[2] It appears Ms. Coyote reached Myra Strand through Russell Strand's website, www.russellstrand.com.

[3] It is unclear from the email string who signed the contract—Russell Strand or Myra Strand, and individually or on behalf of Strand² Squared or some other entity.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 119, 1206 (9th Cir. 2006) (en banc). The Moving Defendants dispute that they "expressly aimed" any alleged act at Oregon.

The Ninth Circuit has "emphasized that 'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, . . . and that 'something more' means conduct expressly aimed at the forum." *Brayton Purcell*, 606 F.3d at 1129 (first alteration in original) (citations omitted). Plaintiff argues that Myra Strand's and RSC's use of a passive website plus individually targeting persons in Oregon satisfies the "expressly aimed" step of the *Calder* test.

### A. Myra Strand

The Ninth Circuit has repeatedly stated that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction." *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). In responding to the pending motion, Plaintiff provided evidence that Myra Strand is responsible for the social media of Strand² Squared and RSC, which includes the websites that contain the allegedly infringing material. Additionally, Myra Strand has solicited business in Oregon with at least Jefferson County and the Confederated Tribes of the Umatilla Indian Reservation, and signed a contract with the latter or negotiated the contract for signature by her co-managing partner, Russell Strand. Those contacts with Oregon are not "by the happenstance of Plaintiff['s] residence." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017). Instead, Myra Strand chose to respond to communications that queried her about FETI training and solicit business in Oregon for her and Russell Strand personally, separate from his consulting with Veracities. This suffices to show the "something more" required for the express aiming prong.

PAGE 9 – OPINION AND ORDER

*Walden* and *Axiom*, the cases relied on by the Moving Defendants, do not support a different result in this case. Those cases emphasize that personal jurisdiction cannot be based on a plaintiff's connection to the forum, and that courts must look to the defendant's connection to the forum. *See Walden*, 571 U.S. at 284-85; *Axiom*, 874 F.3d at 1068. The Court has considered Myra Strand's connection to the forum, not Plaintiff's connection to the forum.

Plaintiff's claims also arise out of or relate to Myra Strand's forum-related activities. Plaintiff's claims arise out of Myra Strand's alleged trademark infringement, unfair competition, and tortious interference with contract when she, among other activities: (1) posted infringing information on her websites, accessible in Oregon; (2) solicited customers to contract with Russell Strand outside of the consulting agreement with Veracities for presentations that included FETI or programs indistinct from FETI, including in Oregon; and (3) encouraged Russell Strand to breach his contracts with Veracities by promoting, marketing, and supporting competing businesses, and giving competing presentations that involved FETI or programs indistinct from FETI, including in Oregon.

Allowing personal jurisdiction in this case over Myra Strand comports with traditional notions of fair play and substantial justice, meaning that it is reasonable. Myra Strand has targeted Oregon residents for her businesses, and has allegedly committed intentional torts, including trademark infringement, against an Oregon company knowing that it is an Oregon company and that the harms she will cause will be felt in Oregon. Although after *Walden* a defendant's individualized targeting of a plaintiff in a forum cannot, standing alone, confer personal jurisdiction, it is still a factor that remains relevant to the overall minimum contacts analysis. *Axiom*, 874 F.3d at 1070.

PAGE 10 – OPINION AND ORDER

## B. RSC

Veracities argues that RSC meets the "expressly aimed" prong because: (1) RSC maintains a passive website that infringes Veracities' marks; (2) Myra Strand's negotiation in 2018 with the Confederated Tribes of the Umatilla Indian Reservation, from Russell Strand's personal website before RSC was formed, shows Russell Strand's intent to enter into contracts independent of Veracities, which can be imputed to after he formed his LLC; (3) RSC registered with a third-party vendor, located in California, so that Veracities, located in Oregon, could electronically pay RSC, located in Arizona, for consulting work done by Russell Strand. Plaintiff argues that RSC knew the underlying contracts between Russell Strand and Veracities were governed by Oregon law, and that supports personal jurisdiction in Oregon.

These activities do not show that RSC personally aimed any conduct at *Oregon*. The website provides some support, but something more must be shown by Plaintiff. Plaintiff argues that Myra Strand's negotiation in 2018 shows that Russell Strand was contracting independent of Veracities, and that may be a logical inference. But that does not show that RSC continued to solicit or contract with Oregon residents. The mere fact that RSC may have solicited or contracted with persons independent of Veracities does not provide this Court with personal jurisdiction—some of those persons must have a connection to Oregon. Finally, the fact that RSC registered with a California company to receive electronic payments from Veracities for Russell Strand's consulting work does not provide a basis for independent personal jurisdiction in Oregon over RSC. Registering with a California company is not an activity expressly aimed at Oregon, nor is passively receiving payment in Arizona. The only activity aimed at Oregon was when RSC sent invoices to Veracities for Russell's consulting work. That is contact with Plaintiff, not the forum, and is not considered a sufficient contact for personal jurisdiction. *See*

*Walden*, 571 U.S. at 284-85; *Axiom*, 874 F.3d at 1068. Because Plaintiff fails to show that RSC expressly aimed its activity at Oregon, the Court does not have personal jurisdiction over RSC.

### C. Jurisdictional Discovery

Plaintiff requests jurisdictional discovery if the Court is inclined to grant the Moving Defendant's motion. Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts in necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts," *see Boschetto*, 539 F.3d at 1020, or more than "bare allegations in the face of specific denials." *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). The Court agrees that jurisdictional discovery is appropriate in this case relating to RSC. Whether RSC solicited or contracted with persons in Oregon is uniquely within the custody or control of RSC. Given Defendants' history of conducting such solicitations and presentations in Oregon, discovery of such information "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

### CONCLUSION

Defendants' motion to dismiss (ECF 12) for lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART. Defendant Myra Strand's motion to dismiss is DENIED. Defendant Russell Strand Consulting, LLC's motion to dismiss is GRANTED. Plaintiff's request for jurisdictional discovery related to Defendant Russell Strand Consulting, LLC is GRANTED.

Plaintiff has leave to file an amended complaint within 60 days of the date of this Opinion and Order if Plaintiff can cure the deficiencies identified in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 12th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge